**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
**PROVIDENCE SAINT JOSEPH**                )
**MEDICAL CENTER**                          )
501 South Buena Vista Street                )
Burbank, CA  91505                          )
                                            )
**SAN PEDRO PENINSULA HOSPITAL**            )
1300 West 7th Street                        )
San Pedro, CA  90731                        )
                                            )
**PROVIDENCE HOLY CROSS**                   )
**MEDICAL CENTER**                          )
15031 Rinaldi Street                        )
Mission Hills, CA  91345                    )
                                            )
**PROVIDENCE LITTLE COMPANY**               )
**OF MARY MEDICAL CENTER**                  )
4101 Torrance Boulevard                     )        Case No.
Torrance, CA  90503                         )
                                            )
**PROVIDENCE ST. MARY**                     )
**MEDICAL CENTER**                          )
401 West Poplar Street                      )
Walla Walla, WA  99362                      )
                                            )
**PROVIDENCE REGIONAL**                     )
**MEDICAL CENTER**                          )
1321 Colby Avenue                           )
Everett, WA  98201                          )
                                            )
**PROVIDENCE ST. PETER HOSPITAL**           )
413 Lilly Road NE                           )
Olympia, WA  98506                          )
                                            )
**SWEDISH MEDICAL CENTER –**                )
**CHERRY HILL CAMPUS**                      )
500 17th Avenue                             )
Seattle, WA  98122                          )

**SWEDISH MEDICAL CENTER**  )
5300 Tallman Avenue NW   )
Seattle, WA  98107     )
             )
**PROVIDENCE SACRED HEART** )
**MEDICAL CENTER**     )
101 West 8th Avenue     )
Spokane, WA  99204     )
             )
**PROVIDENCE HOLY FAMILY**  )
**HOSPITAL**         )
5633 N. Lidgerwood Street   )
Spokane, 99208      )
             )
       Plaintiffs, )
             )
    v.        )
             )
**SYLVIA M. BURWELL**, In Her Official )
Capacity as Secretary of the U.S.  )
Department of Health and Human Services, )
200 Independence Avenue, S.W.  )
Washington, D.C.  20201   )
       Defendant. )
_____ )

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY
DECISION ON MEDICARE REIMBURSEMENT**

## JURSDICTION AND VENUE

1.  This is a civil action brought to obtain judicial review of a final decision rendered by the Provider Reimbursement Review Board ("PRRB" or the "Board"), acting as a component of the United States Department of Health and Human Services ("HHS"). The decision for which judicial review is hereby sought is PRRB Case No. 09-1746GC, dated September 15, 2015.

2.  This action arises under Title XVIII of the Social Security Act, as amended (42 U.S.C. §1395 et. seq.), hereinafter referred to as the "Medicare Act" or the "Act", and the Administrative Procedure Act, 5 U.S.C. § 706.

3.  This Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. § 1331, and 28 U.S.C. § 1361.  Venue lies in this judicial district pursuant to 42 U.S.C. §1395oo(f), and 28 U.S.C. § 1391(e).

4.  Further, this Court has jurisdiction under 42 U.S.C. §1395oo(f), 28 U.S.C. §1331, and 28 U.S.C. §1391(e) because:

    **(a)**      Each provider filed cost reports as required by 42 U.S.C. §1395oo(a);

    **(b)**      Each provider was dissatisfied with its fiscal intermediary's final determination, "…as to the amount of total program reimbursement due the provider… for the period covered by such report," as required by 42 U.S.C. §1395oo(a)(2);

    **(c)**      The amount in controversy for each provider exceeds $10,000, as required by 42 U.S.C. §1395oo(a)(3);

**(d)**       Each provider timely filed an appeal with the PRRB pursuant to 42 U.S.C. §1395oo(a)(3);

**(e)**       The Board remanded each Provider's appeal (except as set forth in (f), below) by way of an Order (see, **Exhibit A**), attached to the Complaint;

**(f)**       The Board excluded from the pertinent appeals herein the following Providers for each of their corresponding fiscal years ending in 2006 for erroneous reasons; to wit: the Board asserts that each such appeal was deemed to be a "post-[1498R] ruling" case, that each such Provider had already been issued revised Notice of Program Reimbursements ("NPR"), and hence, such appeals shall be subject to transfer to another group appeal and to future consideration at a hearing with an undetermined date.  Such delays will significantly prejudice Providers.  Moreover, what the PRRB failed to note is that each of said appeals alleged several issues in addition to the 1498R ruling issue in their respective appeals, and therefore, should and must have each such appeal taken herein as both timely filed and germane to the issues set forth in this case. Such issues include but are not limited to the issues of covered days versus total days for the DSH calculation. Those Providers and the Fiscal Year Ending ("FYE") issues are as follows:

- San Pedro Peninsula Hospital (Medicare Provider no. 05-0078; FYE 12/31/2006);

- Providence Saint Joseph Medical Center (Medicare Provider no. 05-0235; FYE 12/31/2006);

- Providence Holy Cross Medical Center (Medicare Provider no. 05-0278; FYE 12/31/2006);

- Providence Little Company of Mary Medical Center (Medicare Provider no. 05-0353; FYE 12/31/2006);

- Providence St. Mary Medical Center (Medicare Provider no. 50-0002; FYE 12/31/2006);

- Providence Regional Medical Center (Medicare Provider no. 50-0014; FYE 12/31/2006);

- Providence St. Peter Hospital (Medicare Provider no. 50-0024; FYE 12/31/2006);

- Swedish Medical Center – Cherry Hill Campus (Medicare Provider no. 50-0025; FYE 12/31/2006);

- Swedish Medical Center (Medicare Provider no. 50-0027; FYE 12/31/2006);

- Providence Sacred Heart Medical Center (Medicare Provider no. 50-0054; FYE 12/31/2006).

**(g)**     This civil action is filed within sixty (60) days of the date most Providers received the decision of the PRRB ordering the remand to the Intermediary for recalculation letter dated September 15, 2015, (**Exhibit A1**), or within sixty (60) days of the date Providers

who were excluded ((f), above) received the exclusion letter dated September 15, 2015 **(Exhibit A2).**

5. Plaintiffs have exhausted all administrative remedies under federal law.

## PARTIES

6. Plaintiff Hospitals (hereinafter, "Plaintiffs", "Providers" or "Plaintiff Providers") are acute care, in-patient healthcare facilities that serve a disproportionate share of low-income patients. At all relevant times, Plaintiff Providers had Medicare provider agreements with the Secretary of Health and Human Services and were eligible to participate in the Medicare program.

7. The following are the Plaintiff hospitals in this action whose PRRB cases were inappropriately remanded by the Board back to the Fiscal Intermediary for recalculation of the Providers' DSH adjustments:

(a)  **PROVIDENCE SAINT JOSEPH MEDICAL CENTER,** Medicare Provider no. 05-0235; FYE 12/31/2005;

(b)  **SAN PEDRO PENINSULA HOSPITAL,**  Medicare Provider no. 05-0078; FYE's 10/31/2005, 12/31/2005;

(c)  **PROVIDENCE LITTLE COMPANY OF MARY MEDICAL CENTER,** Medicare Provider no. 05-0353; FYE's 10/31/2005, 12/31/2005;

(d)  **PROVIDENCE ST. MARY MEDICAL CENTER,** Medicare Provider no. 50-0002; FYE 12/31/2005;

(e)  **PROVIDENCE REGIONAL MEDICAL CENTER,** Medicare Provider no. 50-0014; FYE 12/31/2005;

(f)  **PROVIDENCE ST. PETER HOSPITAL,** Medicare Provider no. 50-0024; FYE 12/31/2005;

(g)  **SWEDISH MEDICAL CENTER CHERRY HILL,** Medicare Provider no. 50-0025, FYE 12/31/2005;

6

(h)        **SWEDISH MEDICAL CENTER,** Medicare Provider no. 50-0027; FYE 12/31/2005;

(i)        **PROVIDENCE SACRED HEART MEDICAL CENTER,** Medicare Provider no. 50-0054; FYE 12/31/2005;

(j)        **PROVIDENCE HOLY FAMILY HOSPITAL,** Medicare Provider no. 50-0077; FYE's 12/31/2005, 12/31/2006.

8.   The following are the Plaintiff hospitals in this action who were inappropriately excluded by the Board for those reasons set forth in 4(f) above:

(j)   **San Pedro Peninsula Hospital** (Medicare Provider no. 05-0078; FYE 12/31/2006);

(k)   **Providence Saint Joseph Medical Center** (Medicare Provider no. 05-0235; FYE 12/31/2006);

(l)   **Providence Holy Cross Medical Center** (Medicare Provider no. 05-0278, FYE 12/31/2006);

(m)  **Providence Little Company of Mary Medical Center** (Medicare Provider no. 05-0353; FYE 12/31/2006);

(n)   **Providence St. Mary Medical Center** (Medicare Provider no. 50-0002; FYE 12/31/2006);

(o)   **Providence Regional Medical Center** (Medicare Provider no. 50-0014; FYE 12/31/2006);

(p)   **Providence St. Peter Hospital** (Medicare Provider no. 50-0024; FYE 12/31/2006);

(q)   **Swedish Medical Center – Cherry Hill Campus** (Medicare Provider no. 50-0025; FYE 12/31/2006);

(r)   **Swedish Medical Center** (Medicare Provider no. 50-0027; FYE 12/31/2006);

(s)   **Providence Sacred Heart Medical Center** (Medicare Provider no. 50-0054; FYE 12/31/2006).

Plaintiff Providers contends that each of the above noted Providers and corresponding years (FYE) in 2006 (j-s above) should, as a matter of law, be heard and ruled upon in the instant matter.

9.  Defendant, **SYLVIA M. BURWELL**, Secretary of the Department of Health and Human Services ("Secretary"), or her predecessors in office, is the federal officer responsible for the administration of the Medicare program.  Defendant Burwell is sued in her official capacity.

## MEDICARE STATUTORY AND REGULATORY BACKGROUND

10.  Title XVIII of the Social Security Act, Pub. L. No. 89-97, 79 Stat. 291, as amended by 42 U.S.C. §§1395 et. seq. ("the Medicare program"), establishes a program of medical benefits for persons age 65 or older, and also for persons under age 65 who are disabled.   The Centers for Medicare and Medicaid Services "CMS") formerly the Health Care Financing Administration (HCFA), is the operating component of the Department of Health and Human Services (HHS) charged with administering the Medicare program.

11.  Medicare pays for hospital inpatient services through a prospective payment system (PPS) based on predetermined, nationally applicable rates.  42 U.S.C. § 1395ww(d). The PPS statute contains a number of provisions that adjust reimbursements based on hospital-specific factors.  See, 42 U.S.C. §1395ww(d). This case involves the hospital-specific disproportionate share ("DHS") adjustment, which requires the Secretary to provide increased PPS reimbursement to hospitals that serve a "..significantly disproportionate number of low-income patients."  42 U.S.C. §1395ww(d)(5)(F)(i)(I).

12. Whether a hospital qualifies for the DSH adjustment, and how large an adjustment it receives, depends on the hospital's "…disproportionate patient percentage ("DPP"). 42 U.S.C. §1395ww(d)(5)(F)(v). The DPP is the sum of two fractions, the Medicare Fraction and the Medicaid Fraction for a hospital's fiscal period. 42 U.S.C. §1395ww(d)(5)(F)(vi). Hospitals whose DSH percentages meet certain thresholds receive an adjustment which results in increased PPS payments for inpatient hospital services. 42 U.S.C. §1395ww(d)(5)(F)(ii).

### The Medicare and Medicaid Fraction

13. The first fraction's numerator is the number of hospital patient days for such period who (for such days) were entitled to both Medicare Part A and Supplemental Security Income ("SSI") benefits, and the denominator is the number of patient days for patients entitled to Medicare Part A. *Id.* The first fraction is frequently referred to as the Medicare Fraction.

14. The second fraction's numerator is the number of hospital patient days for patients who (for such days) were eligible for medical assistance under a State Plan approved under Title XIX for such period but not entitled to benefits under Medicare Part A, and the denominator is the total number of hospital's patients days for such period. The second fraction is frequently referred to as the Medicaid fraction.

15. This case concerns Part A of the Medicare Act, 42 U.S.C. §§ 1395c-1395i-4, which provides for payments for inpatient hospital services furnished to Medicare beneficiaries.

16. The SSI program is administered by the Social Security Administration "SSA");
therefore, identifying patients who were entitled to SSI during their
hospitalization requires access to SSA's SSI data.  To implement the DSH
legislation, the number of patient days for those patients entitled to both Medicare
Part A and SSI is determined by matching data from the MEDPAR file, which is
Medicare's database of hospital inpatients, with a file created for CMS by SSA to
identify SSI-eligible individuals.

17. CMS's payment and audit functions under the Medicare program are contracted
out to insurance companies known as fiscal intermediaries (FI).  Fiscal
intermediaries determine payment amounts due the Providers under Medicare law
and regulations.  42 U.S.C. §1395h, 42 C.F.R. §§413.20(b) and 413.24(b).
Although the intermediary calculates the DPP, it is CMS that computes the SSI
fraction.

18. At the close of a fiscal year, a provider of services must submit a cost report to its
fiscal intermediary showing both the costs incurred by it during the fiscal year and
the appropriate share of those costs to be apportioned to Medicare. 42 C.F.R.
§ 413.24(f). The intermediary reviews the provider's cost report, makes
adjustments as it deems necessary, and issues a final notice of program
reimbursement ("NPR") to the hospital. Id. §405.1803. A hospital which is
dissatisfied with the NPR may file an administrative appeal to the Provider
Reimbursement Review Board ("PRRB") within 180 days after notice of the
NPR. 42 U.S.C. §1395oo(a).

19. Failure to file an appeal within said 180 day period generally deprives the hospital of any further opportunity for administrative and/or judicial review of the NPR.

20. Pursuant to 42 U.S.C. §1395oo(f)(1), hospitals may obtain judicial review of any final decision of the PRRB, or of any reversal, affirmance, or modification by the Secretary, by a civil action commenced within 60 days from the date on which notice of any such final decision is received.

### Dual Eligible Patients

21. The treatment of individuals who are eligible for *both* Medicaid and Medicare, or "dual-eligibles," has also been controversial for many years.  The specific point of contention is whether certain dual-eligibles should be counted as "entitled to benefits under part A" of Medicare.   Individuals so entitled are categorically excluded from the numerator of the Medicaid fraction (though counted in the denominator), which tends to deflate the DSH payment, and are also included in the numerator and denominator of the Medicare part A/SSI fraction, which tends to deflate the DSH payment even more.  *See Northeast Hosp. Corp. v. Sebelius*, 657 F.3d 1, 5 (D.C. Cir. 2011).

22. An ongoing controversy exists concerning two categories of dual-eligible patients with respect to whom no benefits are paid under Medicare part A for an inpatient hospital stay.   The first category consists of individuals who enrolled in Medicare but elected to receive benefits through Medicare managed care plans under part C of the Medicare Act in lieu of the benefits they would otherwise receive under Medicare parts A and part B.   Providers variously refer to these individuals as '"part C,"  "Medicare + Choice,"  "M+C," or "Medicare Advantage" patients.

11

23. The second category with discord of dual-eligible patients consists of individuals who are enrolled in Medicare part A but were not entitled to <u>payment</u> of part A benefits for some portion or all of their inpatient hospital stays either because the individuals had exhausted part A benefits for a spell of illness, Medicare's payment liability was secondary to another payer, or some other reason. Providers typically refer to this second category of dual-eligible days as "part A non-covered" days.

24. In 2004, the agency adopted a rule addressing both categories of dual-eligible days, effective October 1, 2004.  *See* 69 Fed. Reg. 48,916, 49,098-99 (Aug. 11, 2004).   Under that rule, all part C and part A non-covered patient days would be excluded from the numerator of the Medicaid fraction (even if eligible for Medicaid), and counted in the Medicare part A/SSI fraction.  *Id.*

25. The Court of Appeals has issued three recent decisions on the treatment of dual-eligible patient days in the DSH calculation.  These decisions are controlling as to the substantive validity of CMS Ruling 1498-R discussed in greater detail, *below,* and are is the core issue in this litigation.

26. In *Northeast Hospital*, *supra,* the D.C. Circuit affirmed that part C days must be counted in the Medicaid fraction numerator and excluded from the Medicare part A/SSI fraction for periods before the 2004 rule change.  *Northeast Hosp.*, 657 F.3d  at 13-17.  The Court confirmed that the 2004 rule change cannot be applied retroactively.  *Id.*

27. In *Catholic Health Initiatives-Iowa v. Sebelius*, 718 F.3d 914 (D.C. Cir. 2013), the D.C. Circuit reversed the district court's decision that part A non-covered days

must be included in the Medicaid fraction numerator.  That decision leaves open the question of whether the Part A non-covered days are required to be included in the Medicaid fraction for Cost Reporting periods that began prior to June 2000, which includes all Cost Reporting periods in the instant matter.  The Court of Appeals also noted, however, that these days may not be counted in the Medicare part A/SSI fraction for periods before the 2004 rule change because the regulation in effect then excluded these days from that fraction.  *Id*. at 921 n.5.

28. In *Allina Health*, the D.C. Circuit affirmed the district court's vacatur of the 2004 rule change on part C days.  *Allina Health Services v. Sebelius*, 746 F.3d 1102, 1111 (D.C. Cir. 2014).  The Court declined to accept or decide the agency's argument that defendant could reach the same result, even after vacatur of the 2004 rule, on remand of the plaintiffs' appeals for cost years after the 2004 rule change.  *Id.*  The question of how the agency can proceed post-vacatur is pending before the agency on remand in *Allina* and in related litigation for later cost years that is pending before this Court.

**Paid Days versus Eligible Days**

29. From the inception of the DSH adjustment in 1986, CMS stated that the SSI fraction would include days paid by Medicare, consistent with CMS' original policy regarding the composition of the Medicaid fraction before the issuance of HCFA Ruling 97-2. *See, e.g.,* 51 Fed. Reg. 31454, 31460 (September 3, 1986). In defending its original policy concerning the Medicaid fraction, CMS represented to several Federal courets that the Medicare/SSI fraction counts only Medicare paid days.  *See, e.g., Legacy Emanuel Hospital & Health Center v. Shalala,* 97

F.3d 1261, 1265 (9th Cir. 1996).While CMS has stated that the SSI fraction would only include patient days paid by Medicare Part A, intermediaries have taken the position that the denominator of the SSI fraction should include "eligible" Medicare Part A days.  Furthermore, intermediaries have argued that "eligible" days may include days that were not paid by Medicare.

30. On April 29, 2003, Pat Cribbs, a team leader for the database analysis section at the Social Security Administration ("SSA") with 24 years of experience, testified at a Provider Reimbursement Review Board evidentiary hearing related to PRRB Case Nos. 96-1882, 97-1579, 98-1827, and 99-2061. Ms. Cribbs worked with the preparation of the SSI file that was sent to CMS for the purpose of developing the SSI percentage for hospitals.  In her testimony, Ms. Cribbs stated that in order for an individual to be included in the file that SSA sent to CMS, the individual would have to have been active with one of three pay coded (CO-1, MO-2 or MO-2) and have been getting paid at least a penny for the month in question.

31. Thus, the numerator of the SSI fraction requires payments, and intermediaries are arguing that payment is not required for days to be included in the denominator. An obvious inequity therefore exists.  If the denominator of the SSI fraction includes days that were not paid by Medicare, then the numerator of the SSI fraction should include days for patients that may not have received payment as well.  Alternatively, if the numerator cannot include days that may have gone unpaid, then the denominator should not include unpaid days either.

**Covered Days versus Total Days**

32. Providers contend that the SSI percentage published by CMS for the given cost
report were incorrectly computed.  CMS divided the number of SSI days by the
total number of Medicare patient days.  In years past, CMS has divided the
number of SSI days by the *covered* number of Medicare Part A days, not the *total*
Medicare days.  *See,* 69 Fed. Reg. 48916 at 49098 (August 11, 2004).  CMS has
said that, "[o]ur Policy has been that only covered patient days are included in the
Medicare fraction."  According to 42 C.F.R. § 412.106(b)(2), Medicare Part B
days do not belong in the denominator, and the SSI percentage must use covered
days.  By using total Medicare days in the denominator, and the SSI percentage is
deflated due to the inclusion of Medicare Part A, Part B and Part C days.  If total
Medicare days are to be used in the denominator, then total SSI days must be used
in the numerator.

**C MS RULING 1498-R**

33. On April 28, 2010, CMS issued Ruling 1498-R.  This ruling applies to appeals in
any of the three categories:  1) when a provider challenges CMS' data matching
process for matching Medicare and SSI eligibility data in determining the SSI
fraction; (2) when a provider challenges the exclusion from the disproportionate
patient percentage of non-covered inpatient hospital days (for example, Medicare
secondary payer ("MSP") days or exhausted benefit ("EB") days; or (3) when a
provider challenges the exclusion from the DPP of labor/delivery room (LDR)
inpatient days.

34. Pursuant to CMS Ruling 1498-R, any appeal involving any of the above three categories *must* be remanded by the Board to the fiscal intermediary. The ruling further requires that the FI revise the SSI fraction to include certain inpatient hospital days (e.g., MSP and EB days) in the SSI fraction. The Ruling further requires the FI to re-compute the SSI's fraction using the revised data matching process approved by the district court in *Baystate Medical Center v. Leavitt*, 545 F. Supp. 2d 20, *as amended,* 587 F. Supp 2d 37, 44 (D.D.C. 2008).

35. CMS 1498-R further states that the re-computation of the SSI fraction in accordance with that directive.  CMS Ruling 1498-R further provides as follows:

> *Eliminates any actual case or controversy regarding the hospital's previously calculated SSI fraction and DSH payment adjustment and thereby renders moot each properly pending claim in a DSH appeal involving the hospital's previously calculated SSI fraction, [p]rovided that such claim otherwise satisfies the applicable jurisdictional and procedural requirements of section 1878 of the Act, the Medicare regulations, and other agency rules and guidelines.*

36. CMS Ruling 1498-R further provides as follows:

> *The Ruling provides notice of the determination of the Centers for Medicare & Medicaid Services (CMS) that the Provider Reimbursement Review Board (PRRB) and the other Medicare administrative appeals tribunals lack jurisdiction over provider appeals of any of three issues described [therein] regarding the*

> *calculation of the Medicare disproportionate share hospital (DSH)*
>
> *payment adjustment.*

37. The regulations at 42 C.F.R. §401.108 state that CMS Rulings are binding on all CMS components.  With respect to the scope of the Board's legal authority, the regulation at 42 C.F.R. §405.1867 states that:

> *[i]n exercising its authority to conduct proceedings... the Board*
>
> *must comply with all the provisions of Title XVIII of the Act and*
>
> *regulations issued thereunder, as well as CMS Rulings issued*
>
> *under the authority of the Administrator as described in*
>
> *§401.108...*

## THE SUBSTANTIVE AND PROCEDURAL INVALIDITY OF

## CMS RULING 1498-R

38. CMS Ruling 1498-R is substantively invalid in that it requires the inclusion of certain additional days in the SSI fraction, such as exhausted benefit (EB) days, secondary payer (MSP) days, and potentially, Health Maintenance Organization (HMO) days.

39. The relevant statute requires entitlement to Part A as a condition of inclusion in the SSI fraction.  With respect to EB days, the Medicare statute provides that the Part A benefit for inpatient hospital services covers only a specified number of days per spell of illness.  42 U.S.C. §1395d(a)(1); 42 C.F.R. §409.61(a). Therefore, payment under Part A may not be made for services rendered after those limits have been exhausted.  42 U.S.C. §1395d(b)(1).

40. Similarly, under the Medicare MSP provisions, payment may not be made under Medicare Part A when, "…*payment has been made or can reasonably be expected to be made*" under a health insurance plan or liability insurance policy. 42 U.S.C. §1395y(b)(2)(A).  There is an exception under which CMS is authorized to make "conditional payments" if the primary payer has not made or cannot reasonably be expected to make prompt payment.  However, upon receipt of payment from the primary payer, the beneficiary or provider must reimburse the Medicare trust fund for these conditional payments.  42 U.S.C. §1395y (b)(2)(B)(ii).

41. This statutory scheme clearly establishes that patients to whom the MSP and EB provisions are applied are not, "entitled to benefits under Part A."  In *Jewish Hospital v. Secretary of Health & Human Servs.,* 19 F.3d 270 (6th Cir. 1994), the court held that the word, "entitled" as used in the SSI fraction means that the beneficiary, "*possesses the right or title to that benefit.*"  The court further stated that the, *"Medicare proxy fixes the calculation upon the absolute right to receive an independent and readily defined payment." Id.* At 375.  See also, *Legacy Emanuel Hosp. & Health Ctr. v. Shalala,* 97 F.3d 1261, 1264 (9th Cir. 1996), in which the court noted that use of the term, "entitled" refers to the absolute right to…payment.'" 97 F.3d at 1265 (quoting *Jewish Hospital*).

42. This is also consistent with the Secretary's interpretation of whether a patient is entitled to benefits under the Part D drug benefit program.  CMS has stated that as follows in this regard:

> *In other contexts, we generally have interpreted the concept of*
> *"entitled" to benefits to mean that an individual has met all of the*
> *necessary requirements for a benefit (that is, is eligible for the*
> *benefit), and has actually applied for and been granted coverage.*
> *\*\*\* Accordingly, we will deem an individual "entitled" to Part A,*
> *and thus a Part D eligible individual, if the individual is eligible*
> *for benefits under Part A, and has actually applied for and been*
> *granted coverage under Part A.*  70 Fed. Reg. 4194, 4202 (Jan. 28,
> 2005).

43. By definition, no payment can be made for EB days under Part A, and therefore a
patient cannot be said to be entitled to such payment.  Indeed, the Secretary has
explicitly conceded that there is no entitlement to Part A benefits for EB days
with respect to the Medicare DSH adjustment for "Medicare dependent, small
rural hospital[s]." *See,* 42 U.S.C. §1395ww(d)(5)(G)(iv)(IV).

44. In a 1990 final rule, the Secretary stated that individuals are "*entitled to benefits*
*under [Medicare] part A*" only when they are entitled to have their medical
services paid for under Medicare Part A.  The rule states that, "*[e]ntitlement to*
*payment under part A ceases after the beneficiary has used 90 days in a benefit*
*period and has either exhausted the lifetime reserve days or elected not to use*
*available lifetime reserve days.*"  §55 Fed. Reg. 35990, 35996 (Sept. 4, 1990).
But, *[s]ince patients who have exhausted their part A benefits are no longer*
*entitled to payment under Part A,*" the Secretary concluded that, "*we do not*
*believe that such stays should be counted*" in the Medicare fraction. *Id.*

19

45. The same reasoning applies to MSP days in which payment is made by the primary payer, and not the Medicare program. In such cases, the absence of a Part A payment clearly means that tan individual is not "entitled" to such payment. Indeed, inpatient psychiatric hospital and skilled nursing care that is paid for by a primary payer is not counted against the number of inpatient care days available to the beneficiary under Medicare Part A. 42 C.F.R. §411.30(a). Presumably, these days would be counted against a beneficiary's available benefit days if the beneficiary was "entitled" to payment for those days from Medicare. Moreover, the conditional payments which may be made under the MSP rules do not establish an "absolute, independent" right to payment under Part A. *Jewish Hosp. v. Secretary of Health & Human Servs. Id.*

46. The Secretary has further stated that managed care days governed by 42 U.S.C. §1395mm are also days for which a patient is entitled to benefits under Part A. However, contrary to the Secretary's view, no Medicare Part A payment is made to cover services rendered to managed care patients, and as such these managed care patients are not entitled to benefits under Part A.

47. The revised matching methodology mandated by CMS 1498-R also does not address the matching deficiencies identified by the federal district court in *Baystate Medical Center, supra.* For example, the procedure by which CMS matches SSI entitlement records to Medicare inpatient data, (a) fails to match SSI eligible beneficiaries who do not receive Title II numbers; (b) fails to use multiple identifies; (c) fails to match on a unique identifies; and, (d) fails to match SSI eligible beneficiaries whose Title II number changes within the year. Further, the

*Baystate* litigation also found that the SSI data used for the Medicare percentage numerator is incomplete in that it omits the following SSI eligible beneficiary records, (a) prior to Federal Fiscal Year 1995, inactive SSI records (stale records); (b) records relating to individuals who received a forced or manual payment; (c) records of individuals whose benefits were temporarily on hold or in suspense when SSA ran the tape for CMS; (d) records of SSI days associated with individuals whose benefits were granted or restored retroactively after SSA ran each year's tape; and, €records of individuals entitled to non-cash SSI benefits. These deficiencies have not been properly addressed by the revised matching methodology mandated by CMS 1498-R.

48. Under the revised matching methodology mandated under CMS 1498-R, the Medicare Enrollment Database ("EDB") will be used for the purpose of matching social security numbers of individuals entitled Medicare benefits to individuals who are also receiving SSI benefits.

49. However, information in the EDB is not retrievable by individual social security numbers.  The Federal Register Privacy Act notice states that information in the EDB is retrievable by Health Insurance Claim (HIC) number or name search.  The official description of the EDB states that the records in the system include the "*individual's health insurance numbers, name, geographic location, race/ethnicity, sex and date of birth.*"  There is no indication from the Federal Register notices that Social Security numbers are included in the EDB.  See, 67 Fed. Reg. January 23, 2002; 73 Fed. Reg. 10249, February 26, 2008.

50. As a result, CMS 1498-R does not address one of the key matching deficiencies identified by the district court in *Baystate,* i.e., the failure to match Medicare and SSI records on the basis of Social Security numbers. i.e., the failure to match Medicare and SSI records on the basis of Social Security numbers.

51. Further, records in the EDB are maintained for only a period of 15 years.  As some of the cost years in this case go back further than 15 years, the revised matching process contemplated by CMS 1498-R cannot possibly be implemented in this case.

52. Moreover, there are substantive deficiencies in the records maintained by SSA which CMS 1498-R fails to address.  CMS states that, *Codes beginning with the letter "S" reflect records that are in a suspended" status and, according to SSA, do not represent individuals who are entitled to SSI benefits."*  The S codes will be changed to an active code upon the making of a retroactive entitlement determination. However, this change is only reflected on SSA's records for the month in which the retroactive SSI payment is actually made, and not for any prior months which were in a suspended status.  Thus, the match will identify entitlement only for the month in which the retroactive payment is actually made, and not for any prior months which the retroactive payment was intended to cover.

53. Similarly, Code S-06 is applied where the payment was suspended because "recipient's address is unknown."  The fact that a recipient's address is unknown is not a reason for denying payment under the applicable regulations.  An otherwise eligible individual is "entitled" to SSI benefits unless the reason for

non-payment is one of the reasons specified in the applicable regulations. *See,* 20

C.F.R. §§416.207 – 416.216.  As the fact that a recipient's address is unknown is

not one of the reasons specified in 20 C.F.R. §§416.207 – 416.216, these

individuals should be placed in an active code status, so that the revised matching

program will include them in the SSI fraction.  Once again, CMS 1498-R does not

address this deficiency in the process of formulating the SSI fraction.

## **PROCEDURAL INVALIDITY OF CMS 1498-R**

54. CMS 1498-R purports to divest the Board of jurisdiction over the categories of

    appeals covered by that Ruling.  However, this policy is incompatible with the

    requirement that the Board remand cases subject to CMS 1498-R back to the

    intermediary for re-computation of the SSI fraction.

55. It is well established that once a tribunal has determined that it lacks jurisdiction

    over a matter, its only option is to dismiss without prejudice.  Under the

    Secretary's regulations, a dismissal for lack of jurisdiction is a final decision

    which is immediately subject to judicial review, while a remand is an

    interlocutory decision which is not immediately appealable.  *See,* 42 C.F.R.

    §405.1875(e)(4)(iii) (decision by the Administrator remanding a matter to the

    Board for further proceedings [i]s not a final decision for purposes of judicial

    review). *See* also 42 C.F.R. §405.1877(b)(3)(ii) (precluding judicial review of an

    Administrator's remand order).

56. Accordingly, CMS 1498-R is procedurally invalid because it purports to divest

    the Board of jurisdiction, while t the same time requiring the Board to remand to

    the intermediary.

57. Moreover, the Secretary exceeded the scope of her statutory authority in promulgating a carte blanche rule which purports to divest the Board of jurisdiction over the three categories of appeals subject to CMS 1498-R.  The PRRB has the inherent right as an administrative tribunal created by Congress to make determinations as to its own jurisdiction under the facts of each specific case. The Secretary's preemption of the PRRB's prerogative to determine its own jurisdiction constituted a violation of the organic statute under which the Board operates.  *See,* 42 U.S.C. §1395oo.

58. CMS Ruling 1498-R purports to divest the Board of jurisdiction based on the premise that including all "non-covered" days in the SSI fraction eliminates any "controversy" concerning this issue, and thereby renders "moot" all pending appeals. However, Plaintiff Providers are claiming "non-covered" days as part of the Medicaid fraction, and not the SSI fraction.  As a result, CMS Ruling 1498-R does not eliminate the "controversy" concerning whether non-covered days should be included in the SSI or the Medicaid fraction.

59. Additionally, the Secretary's authority under 42 U.S.C. §1395oo is limited to "reversal, affirmance, or modification" of a Board decision.  This language does not encompass the authority to order the Board to remand back to the fiscal intermediary (FI), as required by Ruling 1498-R.  The Board is also not given the authority under 42 U.S.C. §1395oo to order a remand back to the FI.

60. The cost years at issue in this case are nearly twenty years old.  As a result of CMS 1498-R, Plaintiff Providers have still not received the final agency determination required to trigger its judicial review rights.

## CMS 1498-R WAS INVALIDLY PROMULGATED

61. It is well settled that an agency may not promulgate a retroactive rule absent express congressional authorization. *See, Bowen v. Georgetown Univ. Hosp.,* 488 U.S. 204, 208 (1988). Moreover, once an agency gives its interpretation to a regulation, it can only change that interpretation as it would formally modify the regulation itself through the process of notice and comment rulemaking under 5 U.S.C. §553.  *See, Paralyzed Veterans of America v. D.C. Arena L.P.,* 117 F.3d 579, 586 (D.C. Cir. 1997).

62. Ruling 1498-R explicitly concedes that CMS has changed policies on whether "non-covered" days may be included in the SSI fraction.  The Ruling states that it was not until 2005 that CMS determined that "non-covered" days could be included in the SSI fraction.[1]  Prior thereto, the Secretary interpreted the term, "entitled" to mean "covered" or "paid."  *See,* Fed. Reg. 48916, 49098-99 (Aug. 11, 2004) (discussing October 1, 2004 as the date to *begin* counting exhausted benefit days in the Medicare/SSI fraction); *see, also* 70 Fed. Reg. 47278, 47441 (Aug. 12, 2005) (explaining that CMS's "policy change" with respect to Medicare secondary payer days applies to "FY 2005 and subsequent years"). *See, also Catholic Health Initiatives Iowa Corp. v. Sebelius,* 718 F.3d 914, 921 (fn.5) (D.C. Cir. 2013).

63. The days in question in the present case were non-covered days which occurred prior to 2005.  As such, these days would have been excluded from the SSI

---

1 Ruling 1498-R states as follows: "*Under CMS' original policy, inpatient days were included in the numerator of the DSH SSI fraction only if the inpatient hospital days were "covered" under Medicare Part A and the patient was entitled to SSI benefits; Part A coverage of inpatient days alone was required for inclusion in the denominator of the SSI fraction.  See, e.g., 42 C.F.R. §412.106(b)(2)(i) (2003)."*

fraction applying the regulations in effect when the inpatient stays actually occurred.  Therefore, remanding these days for inclusion in the SSI fraction under 1498-R constitutes retroactive rulemaking.

64. The publication requirements of the Medicare Act also provide that, "*no rule, requirement, or other statement of policy that establishes or changes a substantive legal standard governing the scope of benefits, the payment for services, or the eligibility of individuals, entities, or organizations to furnish or receive services shall take effect unless it is promulgated by the Secretary by regulation.*"  42 U.S.C. §1395hh(a)(2).  The Medicare Act also requires the Secretary to publish in the Federal Register, a list of all manual instructions, interpretative rules, statements of policy, and guidelines of general applicability.  42 U.S.C. §1395hh(c).  The Freedom of Information Act (FOIA) similarly requires an agency to publish in the Federal Register statements of general policy and interpretations of general applicability.  5 U.S.C. §552(a)(1)(D).

65. The policy contained in CMS Ruling 1498-R falls within the ambit of the publication requirements of 42 U.S.C. §1395hh(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D).  The Secretary's failure to publish CMS Ruling 1498-R until after the cost years at issue in this case was a violation of these requirements, and the Secretary is therefore precluded from applying the interpretation contained in CMS Ruling 1498-R to Plaintiff Providers in this case.  42 U.S.C. §1395hh(e); 5 U.S.C. §552(a)(1); 5 U.S.C. §552(a)(2).

## **FACTS RELATING TO PLAINTIFF PROVIDERS**

66. In their appeals to the Board, Plaintiff Providers argued that CMS' computation of each Provider's SSI percentage failed to reconcile with that facility's patient records, as well as SSI entitlement data obtained from State Medicaid agencies and the Social Security Administration (SSA) itself.  Plaintiff Providers further argued that CMS used flawed match procedures in attempting to identify which of the Providers' inpatients were entitled to SSI benefits.  Plaintiff Providers also contended that the procedure mandated by CMS Ruling 1498-R was incorrect because it required inclusion of days not covered by Medicare Part A in each Plaintiff Provider's SSI fraction.  Plaintiff Providers also contended that the Board used "total" Medicare days in the denominator of the SSI fraction, and therefore the SSI percentage was deflated due to the inclusion of Medicare Part A, Part B and Part C days. Further, that if the Board were to use "total" Medicare days in the denominator of the SSI fraction, then total SSI days **must** be used in the numerator. The PRRB's decision dated September 15, 2015 denied these appeals, and instead remanded the case back to the FIs pursuant to the Board's standard CMS Ruling 1498-R remand order, except for those that were improperly excluded from the appeals as further set forth in 4(f), above.

67. All relevant jurisdictional documents are attached hereto as **Exhibits B – Z.**

**COUNT I**

**UNLAWFUL TREATMENT OF THE MEDICARE SECONDARY PAYER, EXHAUSTED BENEFIT AND OTHER SIMILAR DAYS IN THE DSH CALCULATION**

68. Plaintiff Providers hereby incorporate by reference paragraphs 1 through 63 of the Complaint as though fully set forth herein.

69. CMS Ruling 1498-R requires the inclusion of non-covered inpatient hospital days in the SSI/Medicare Fraction, including Medicare Secondary Payer, Exhausted Benefit and other similar days. Inclusion of these days in the SSI/Medicare Fraction is invalid because it is contrary to the plain language of the statue, and is also inconsistent with the Secretary's practice during the time periods relevant to this appeal and it is the result of an invalid retroactive rule making, according to Northeast Hospital, supra.

70. Upon remand, the Secretary has stated that Part C days under 42 U.S.C. § 1395w-21 will also be included in the SSI/Medicare Fraction. Inclusion of Part C days in the SSI/Medicare Fraction is also invalid because it was inconsistent with the Secretary's practice during the time periods relevant to this appeal and because it would also be inconsistent with the plain language of the statute and the D.C. Circuit's decision in Northeast Hospital, supra.

71. Based on the foregoing, the Board's decision dated February 7, 2014 remanding Plaintiff Providers' appeals back to the Intermediary for inclusion of MSP, EB and Part C days in the SSI/Medicare Fraction, as required by CMS Ruling 1498-

R, was arbitrary and capricious and otherwise not in accordance with law. 5 U.S.C. §706(2)(A).

72. As a result of the Secretary's unlawful Ruling and instructions to its Fiscal Intermediaries the Providers will suffer economic harm because their DPP and/or DSH adjustments will be lower than that to which they are entitled under the law.

73. Based upon the foregoing, Providers are entitled an order declaring the Secretary's instructions in CMS Ruling 1498-R to be unlawful and/or for a Mandamus Order requiring the Secretary to calculate Plaintiff Providers' DPP for the fiscal years at issue here correctly, as elucidated in Northeast Hospital, supra.

## COUNT II

## CONTINUED FAILURE TO USE THE BEST AVAILABLE DATA TO CALCULATE THE SSI FRACTION

74. Providers hereby incorporate by reference paragraphs 1 through 69 of the Complaint as though fully set forth herein.

75. CMS Ruling 1498-R is arbitrary, capricious, in violation of the Medicare Act and/or otherwise in violation of the law, in violation of 5 U.S.C. §706(2)(A), because it continues to fail to use, "the most reliable data available to produce figures that can be considered sufficiently accurate", and otherwise fails to comply with the *Baystate* decision, *supra*, including:

> (a) The failure to use Social Security numbers in the matching process;

> (b) The revised matching process fails to take into consideration SSI beneficiaries who are entitled to SSI, but whose payments are in suspense or other non-pay status;

29

(c) Under the terms of the Ruling, individuals are "entitled" to SSI only when they actually receive an SSI payment, whereas individuals are deemed "entitled" to Medicare even if they do not receive any payment from Medicare;

(d) Individuals whose SSI benefits are retroactively awarded will be captured in the matching process only in the month in which the retroactive payment is actually made, and not in the prior months, which the retroactive payment was intended to cover.

72. As a result of the foregoing deficiencies, Plaintiff Providers will suffer economic harm because their DPP and/or DSH adjustments will be lower than that to which they are entitled under the law.

73. Based on the foregoing, Plaintiff Providers are entitled to an order declaring the Secretary's instructions in CMS Ruling 1498-R to be unlawful and/or for a Mandamus Order requiring the Secretary to use the best available data, as elucidated herein, to calculate the SSI fraction.

## COUNT III

## INAPPROPRIATE USE OF TOTAL DAYS

74. Plaintiff Providers hereby incorporate by reference paragraphs 1 through 73 of the Complaint as though fully set forth herein.

75. According to 42 C.F.R. § 412.106(b)(2), Medicare Part B days do not belong in the Medicare fraction denominator, and the SSI percentage must use *covered days.* By using *total* Medicare days in the denominator, the SSI percentage is deflated due to the inclusion of Medicare Part A, Part B and Part C days. If total

Medicare days are to be used in the denominator, then total SSI days must be used in the numerator.

## COUNT IV

## CMS RULING 1498-R IS PROCEDURALLY UNLAWFUL AND MUST BE WITHDRAWN

76. Plaintiff Providers hereby incorporate by reference paragraphs 1 through 75 of the Complaint as though fully set forth herein.

77. CMS Ruling 1498-R constitutes a significant departure from the Secretary's interpretation of the Medicare statute and the processing of appeals before the Board; therefore, the Secretary was subject to the advance notice and comment rule making required by the Administrative Procedures Act, 5 U.S.C. §553. The Secretary violated the Administrative Procedures Act by failing to abide by advanced notice and comment rule making.

78.  CMS Ruling 1498-R purports to render Plaintiff Providers' appeal over issues covered thereby as if they had been resolved on the merits in Plaintiff Providers' favor by way of an order requiring the intermediaries to recalculate Plaintiff Providers' DPP and DSH adjustment in accordance with the strictures of the Ruling, thereby divesting the Board of jurisdiction over the categories of appeals covered by that Ruling.

79. The remand pursuant to CMS Ruling 1498-R is a final determination of the Plaintiff Providers' rights, ripe for review by this Court pursuant to 42 U.S.C. § 1395oo(f) (which states that the decisions of the Board are final and reviewable

by the District Courts unless the Secretary reverses, affirms or modifies the

Board's decision).

80.  In the alternative, it would be in excess of the Secretary's authority under the

Medicare Act to make a determination that its decision to require intermediaries

to take action consistent with CMS Ruling1498-R resolves the Providers'

dissatisfaction. See, 42 U.S.C. § 1395oo(a) ("Any provider of services which has

filed a required cost report within the time specified in regulations may obtain a

hearing with respect to such cost report by a Provider Reimbursement Review

Board...if...such provider...is dissatisfied with a final determination... as to the

amount of total program reimbursement due the provider... for the period covered

by such report."). In this case, however, as more specifically stated in this

Complaint, Ruling 1498-R does not satisfy the Providers' dissatisfaction with the

final determination as to the amount of total program reimbursement due for the

period covered by the cost reports at issue in this Complaint.

81.  The publication requirements of the Medicare Act also provide that, "no rule,

requirement, or other statement of policy that establishes or changes a substantive

legal standard governing the scope of benefits, the payment for services, or the

eligibility of individuals, entities, or organizations to furnish or receive services

shall take effect unless it is promulgated by the Secretary by regulation." 42

U.S.C. §1395hh(a)(2). The Medicare Act also requires the Secretary to publish in

the Federal Register, a list of all manual instructions, interpretive rules, statements

of policy, and guidelines of general applicability. 42 U.S.C. § 1395hh(c). The

Freedom of Information Act ("FOIA") similarly requires an agency to publish in

the Federal Register statements of general policy and interpretations of general applicability. 5 U.S.C. § 552(a)(1)(D).

82. The policy contained in CMS Ruling 1498-R falls within the ambit of the publication requirements of 42 U.S.C. § 139599(a)(2) and/or 1395hh(c), as well as 5 U.S.C. §552(a)(1)(D). The Secretary's failure to publish CMS Ruling 1498-R until after the fiscal years at issue in this case was a violation of these requirements, and the Secretary is therefore precluded from applying the interpretation contained in CMS Ruling 1498-R to Plaintiff Providers in this case. 42 U.S.C. § 1395hh(e); 5 U.S.C. § 552(a)(1); 5 U.S.C. § 552(a)(2).

83. As a result of the CMS Ruling 1498-R, and the calculations mandated thereby, the Providers will suffer economic harm because their DPP and/or DSH adjustments will be lower than that to which they are entitled under the law.

84. Based upon the foregoing, Plaintiff Providers are entitled to an order declaring the Secretary's issuance of CMS Ruling 1498-R to be unlawful and/or for a Mandamus Order requiring the Secretary to withdraw the Ruling.

**COUNT V**

**MANDAMUS TO PRODUCE SSI ENTITLEMENT DATA**

85. Plaintiff Providers hereby incorporate by reference paragraphs 1 through 84 of the Complaint as though fully set forth herein.

86. The Secretary also has a non-discretionary duty to provide access to SSI entitlement data so that each Provider can compute its own SSI/Medicare Fraction. Section 951 of the Medicare Prescription Drug, Improvement and Modernization Act ("MMA") of 2003, Pub. L. No. 108-173 (2003) required HHS

to arrange by December 8, 2004 to furnish hospitals with the data necessary to compute the number of patient days used in calculating the disproportionate patient percentage. There are no legal remedies available to Plaintiff Providers to compel disclosure by the Secretary of the data falling within the purview of Section 951 of the MMA. As such, Plaintiff Providers are entitled to a Writ of Mandamus pursuant to 28 U.S.C. § 1361, directing the Secretary to furnish Plaintiff Providers such data as is required so that each Provider may compute its own SSI/Medicare Fraction.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Providers pray for an Order:

87. Reversing and setting aside the decision of the PRRB;

88. Declaring that CMS Ruling 1498-R is invalid, and that the Board's action in remanding the Providers' appeals back to the Intermediary pursuant to CMS Ruling 1498-R is arbitrary and capricious and contrary to law;

89. Declaring the calculations required to be made in CMS Ruling 1498-R to be unlawful;

90. Requiring, by way of mandamus or declaratory relief, the Secretary to retroactively withdraw CMS Ruling 1498-R and to reinstate all affected appeals to the Provider Reimbursement Review Board;

91. Requiring, by way of mandamus or declaratory relief, the Secretary to calculate their DPP and DSH adjustment in accordance with this Circuit Court of Appeals' decision in Northeast Hospital, supra, and not as the Secretary has mandated in CMS Ruling 1498-R;

92. Requiring, by way of mandamus or declaratory relief, the Secretary to revise its SSI matching protocol to resolve the above-referenced deficiencies;

93. Requiring, by way of mandamus, and directing the Secretary to provide such additional data so as to enable each Provider to compute its own SSI/Medicare Fraction;

94. Requiring, by way of mandamus, and directly the Secretary to include Providers and their respective FYE's 2006 as set forth more fully in paragraph 8(j) through (s), above;

95. Awarding the costs of this suit incurred by Providers;

96. Awarding Providers interest as required by 42 U.S.C. § 1395oo(f); and,

97. For such other and further relief as the Court may deem just and proper under the circumstances.

DATED:  November 16, 2015                         Respectfully submitted,

*Alan J. Sedley*

Alan J. Sedley, Esq.  Bar# OH0017
A Professional Law Corporation
19900 MacArthur Blvd Suite 1150
Irvine, CA  92612
(949) 502-5399
asedley@smhealthlaw.com

Counsel for Plaintiff Providers